NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JAMES F. JOHNSON,                      :
                                       :  Civil Action No. 07-633 (NLH)
               Plaintiff,              :
                                       :
        v.                             :    **OPINION**
                                       :
JOSEPH PACHOLSK1, et al.,              :
                                       :
               Defendants.             :

APPEARANCES:

        JAMES F. JOHNSON, Plaintiff pro se
        #07561-016
        F.C.I. Fort Dix
        P.O. Box 7000
        Fort Dix, New Jersey 08640

HILLMAN, District Judge

        Plaintiff James F. Johnson ("Johnson"), a federal inmate

currently confined at the Federal Correction Institution in Fort

Dix, New Jersey, at the time he submitted his Complaint for

filing, seeks to bring this action in forma pauperis alleging

violations of his constitutional rights.  Based on his affidavit

of indigence, the Court will grant plaintiff's application to

proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) (1998)

and order the Clerk of the Court to file the Complaint.

        At this time, the Court must review the Complaint pursuant

to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it

should be dismissed as frivolous or malicious, for failure to

Dockets.Justia.com

state a claim upon which relief may be granted, or because it

seeks monetary relief from a defendant who is immune from such

relief.  For the reasons set forth below, the Court concludes

that the Complaint may proceed in part.

## I.  BACKGROUND

Johnson brings this civil rights action[1] against the

following defendants: Joseph Pacholski, Examiner of the United

States Parole Commission ("USPC"); J. Keller, Education

Department of the Federal Bureau of Prisons ("FBOP"); Scott

Weiss, Director of the Kintock Group; J. Ordonez, FBOP Case

Manager; Herbik, FBOP Unit Manager; Disciplinary Hearing Officer

("DHO") Mulvey; R. Hood, FBOP Counselor Unit 5812; DHO Boyce; and

Wegit, FBOP Counselor 5812 Unit.  In an amended pleading

submitted on or before May 9, 2007, Johnson seeks to add the

following defendants, E. Davis, Teacher at FCI Fort Dix, and S.

Smith, Teacher at FCI Fort Dix.  The following factual

allegations by plaintiff are taken from the Complaint and amended

---

[1]  The Court notes that plaintiff has a pending action
before this Court, Johnson v. Chairperson United States Parole
Commission, et al., Civil No. 06-2390 (NLH).  In that action,
Johnson challenges the requirement that he register as a sex
offender based on a 30-year old conviction.  He had been released
on parole previously, but the parole was revoked or rescinded in
2006.  While it appears that the disciplinary infraction at issue
in the present case might have been the basis for the revocation
of Johnson's parole, Johnson does not challenge the revocation of
his parole in his earlier action.  Therefore, the two cases do
not assert claims involving a common question of law or fact that
would otherwise warrant their consolidation pursuant to
Fed.R.Civ.P. 42(a).

pleadings, and are accepted as true for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

Johnson is currently confined at F.C.I. Fort Dix in Fort Dix, New Jersey, with a projected release date of August 16, 2007.  See U.S. Bureau of Prisons Inmate Locator Internet Site.

The Complaint presents a scrambled account of many different constitutional violations.  First, Johnson alleges that his medications for serious medical conditions, such as high blood pressure, heart condition, diabetes, bleeding ulcers, choking diseases, varicose veins, arthritis, and debilitating hip muscles, have been confiscated by defendants for no legitimate reason.  He also claims that his prescribed eyeglasses were confiscated,[2] and that he has been denied medically authorized handicapped living quarters for weeks at a time.[3]

_____

[2]  In the Complaint, Johnson alleges that defendant R. Hood was the officer who delayed plaintiff's necessary medications for eight days, and confiscated plaintiff's glasses, and commissary items paid for by plaintiff, such as legal paper, typing ribbon, and a radio.

[3]  Johnson specifically alleges that Case Manager Herbik lied to the medical department and the duty officer about plaintiff's removal from the medical handicapped unit, saying that all the beds in the unit were taken.  When the duty officer called, Herbik again lied and said plaintiff was moved back to the medical handicap unit when, in fact, plaintiff was not moved. Johnson also asserts that defendant Wegit, who was on the Unit Team Disciplinary Committee, conspired with Herbik to confiscate Johnson's medically approved and handicapped bed space by placing other inmates in the available beds who did not have the proper medical authorizations.  Johnson states that he needs a medical

3

In a separate claim, Johnson alleges that defendant R. Hood kicked plaintiff's walker out from him, for no legitimate reason, causing plaintiff to fall and injure his head.  He needed hospital care for his head and related injuries.

Next, Johnson complains that defendants have called him names, such as "monkey", and have told him to use his feet to write.  In particular, Johnson alleges that defendant Hood accused plaintiff of beating and pounding his chest "like a monkey."  When another correctional officer told Hood that everything was okay, Hood replied, "You don't tell me what I do. I want this monkey out of here!"  Case Manager Herbik also told plaintiff, while he was in solitary confinement on January 18, 2007, that plaintiff could use his feet to write with, when plaintiff asked for his commissary items.

Johnson also complains that his outgoing mail was stopped and censored in violation of his First Amendment rights.  He states that defendant, J. Keller, stopped a letter from being mailed[4] and wrote a disciplinary report against plaintiff for

---

unit bed because of his bladder and prostate problems and his arthritis and muscle debilitation that requires him to use a walker.  Further, Johnson has medical authorization for the handicap unit.

[4]  Johnson also alleges that defendant Scott Weiss, Director of Kintock Group, violated his First Amendment rights by opening the letter addressed to the Kintock Group female employee, and determined that it should not be delivered to her.  It is not clear whether there was more than one letter, or that the letter was opened and returned by defendant Weiss to defendant Keller,

writing the letter.  The report stated that the letter contained
a sexual proposal to a female employee of the Kintock Group (a
halfway house).  Johnson states the opening and confiscation of
his outgoing mail violates his First Amendment right to
communicate with others.  As a result of this disciplinary
charge, Johnson's parole release date of December 16, 2006 was
extended for 12 months.[5]

Johnson further complains that defendant J. Ordonez failed
to inform the USPC that Johnson had appealed the disciplinary
report regarding the high security violation of making a sexual
proposal.  The Regional Director had remanded the disciplinary
matter for consideration of a lesser security violation.  The
remand decision was made before the parole release date of
December 16, 2006.  Consequently, on December 1, 2006, the USPC
rescinded the December 16, 2006 parole release date and
rescheduled a hearing on January 10, 2007.  Johnson also
complains that Ordonez told plaintiff that he should stop writing
letters.

who then wrote the disciplinary charge.

    [5]  Johnson alleges that he has had "bogus" disciplinary
reports filed against him, resulting in a delay of his parole
release date.  Again, it is not clear from the Complaint whether
there was more than one disciplinary charge.  However, it is
apparent from the Complaint and attachments that Johnson's parole
release date was extended as a result of the disciplinary
infraction involving the letter that contained a sexual proposal
to a Kintock Group employee.

Johnson next alleges that defendant Hood conspired with defendants Ordonez and Herbik to refer plaintiff for disciplinary proceedings so as to prevent his release on parole.  For instance, Hood placed plaintiff in solitary confinement on August 15, 2006 on false charges.  Defendant Herbik allegedly authorized these actions.

With respect to his disciplinary hearing, Johnson alleges that DHO Boyce, the hearing officer on the disciplinary hearing before the appeal, disregarded plaintiff's First Amendment rights by finding plaintiff guilty of making a sexual proposal in a letter plaintiff wrote to an employee at the Kintock Group.  Because of this disciplinary finding, plaintiff was denied community correctional center ("CCC") placement in October 2006, and his parole release date was rescinded.  Johnson appealed DHO Boyce's decision, and the case was remanded by the Appeals Director for consideration of the charge under a less serious code violation.  On remand, DHO Mulvey found plaintiff guilty of Code violation # 398 (disrupting the orderly duties of a staff member).  However, Johnson alleges that defendant DHO Mulvey also disregarded the evidence that plaintiff proffered on his First Amendment right to write letters to outside persons and say what he chooses to say.

Finally, Johnson asserts that defendant USPC Examiner Pacholski conducted an illegal parole rescission hearing on

6

January 10, 2007, because Pacholski refused to accept evidence presented by Johnson in mitigation of the disciplinary charge. Pacholski refused to acknowledge that the disciplinary matter was not a new charge but a remanded charge by the FBOP Appeals Regional Director.

Johnson seeks compensatory and punitive damages from each named defendant in excess of $75,000.00.  He also seeks $2,000.00 per day for each day he remains confined past his original December 16, 2006 parole release date.  His action proceeds against the named defendants in their official and individual capacities.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the

7

plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading

8

requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

## III.   ANALYSIS

### A.   Jurisdiction and Venue

Johnson asserts jurisdiction and venue pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1391, 18 U.S.C. §§ 241 and 242, and the First, Fourth, Fifth, Eighth and Fourteenth Amendments.

#### 1.   *Venue*

Pursuant to the general federal venue provision:

. . .

(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, ... or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

. . .

9

(e) A civil action in which a defendant is an officer or
employee of the United States or any agency thereof acting
in his official capacity or under color of legal authority,
or an agency of the United States, or the United States,
may, except as otherwise provided by law, be brought in any
judicial district in which (1) a defendant in the action
resides, (2) a substantial part of the events or omissions
giving rise to the claim occurred, or a substantial part of
property that is the subject of the action is situated, or
(3) the plaintiff resides if no real property is involved in
the action. ...

28 U.S.C. § 1391.

Here, Section 1391(e)(3), relating to actions against
officers and employees of the United States acting in their
official capacities, does not apply because this action seeks
monetary damages from federal officials expressly being sued in
their individual capacities for alleged violations of plaintiff's
civil rights pursuant to 42 U.S.C. § 1983, or more pertinently,
under Bivens v. Six Unknown Named Agents of Federal Bureau of
Narcotics, 403 U.S. 388 (1971).  See Stafford v. Briggs, 444 U.S.
527 (1980)(subsection (e)(3) does not apply to suits filed
against federal government employees for monetary damages);
Micklus v. Carlson, 632 F.2d 227, 240-41 (3d Cir. 1980) (section
1391(e) does "not apply to actions for money damages brought
against federal officials in their individual capacities").

Thus, subsection (b) governs the venue determination here.
As most of the defendants appear to reside in this judicial
district, and because a substantial part, if not all, of the

events or omissions giving rise to the claim occurred in this judicial district, venue is proper in this instance.

    2.  *Jurisdiction*

    Jurisdiction is properly based on federal question jurisdiction, pursuant to 28 U.S.C. § 1331, because plaintiff is asserting violations of his federal constitutional rights pursuant to 42 U.S.C. § 1983.[6]

    However, Section 1983 applies to state actors.  In this case, plaintiff's First, Fourth, Fifth, and Eighth Amendment claims are asserted against federal government officials, and are therefore more appropriately analyzed under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). In Bivens, the Supreme Court held that one is entitled to recover monetary damages for injuries suffered as a result of federal

---

    [6]  Johnson also asserts jurisdiction premised on alleged violations of federal criminal statutes, 18 U.S.C. §§ 241 and 242.  However, there is no private right of action under these federal criminal statutes, proscribing deprivation of rights under color of law and conspiracy to commit such offenses.  See Rockefeller v. United States Court of Appeals Office for Tenth Circuit Judges, 248 F. Supp.2d 17, 23 (D.D.C. 2003); Willing v. Lake Orion Community Schools Board of Trustees, 924 F. Supp. 815, 818 (E.D. Mich. 1996); Moore v. Kamikawa, 940 F. Supp. 260, 265 (D. Hawaii 1995)(criminal statutes 18 U.S.C. §§ 241, 242 provide no basis for civil liability), aff'd, 82 F.3d 423 (9th Cir. 1996); United States v. City of Philadelphia, 482 F. Supp. 1248, 1260(Statutes 18 U.S.C. §§ 241, 242, which create criminal penalties for deprivations of constitutional rights, effected by means of conspiracy or under color of state law, do not authorize any private civil cause of action or create any civil liability), aff'd, 644 F.2d 187 (3d Cir. 1980).  Accordingly, these claims asserting violation of federal criminal statutes, 18 U.S.C. §§ 241, 242, will be dismissed for lack of jurisdiction.

officials' violations of the Fourth Amendment. In doing so, the Supreme Court created a new tort as it applied to federal officers, and a federal counterpart to the remedy created by 42 U.S.C. § 1983.[7] The Supreme Court has also implied Bivens damages remedies directly under the Eighth Amendment, see Carlson v. Green, 446 U.S. 14 (1980), and the Fifth Amendment, see Davis v. Passman, 442 U.S. 228 (1979).[8]

In order to state a claim under Bivens, a claimant must show (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law. See Mahoney v. Nat'l Org. For Women, 681 F. Supp. 129, 132 (D. Conn. 1987)(citing Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155-56 (1978)).

---

[7] Bivens actions are simply the federal counterpart to § 1983 actions brought against state officials who violate federal constitutional or statutory rights. Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004), cert. denied, 543 U.S. 1049 (2005). Both are designed to provide redress for constitutional violations. Thus, while the two bodies of law are not "precisely parallel", there is a "general trend" to incorporate § 1983 law into Bivens suits. Chin v. Bowen, 833 F.2d 21, 24 (2d Cir. 1987)).

[8] Johnson also generally asserts a violation of his Fourteenth Amendment rights. However, because Johnson claims that federal government officials violated his rights to due process, such claim falls under the Fifth Amendment rather than the Fourteenth Amendment. Accordingly, there are no cognizable claims asserting Fourteenth Amendment violations in the Complaint.

The United States has sovereign immunity except where it consents to be sued.  United States v. Mitchell, 463 U.S. 206, 212 (1983).  In the absence of such a waiver of immunity, Johnson cannot proceed in an action for damages against the United States or an agency of the federal government for alleged deprivation of a constitutional right, see FDIC v. Meyer, 510 U.S. 471, 484-87 (1994), or against any of the individual defendants in their official capacities, see Kentucky v. Graham, 473 U.S. 159, 166 (1985) (a suit against a government officer in his or her official capacity is a suit against the government).  Therefore, the Complaint is dismissed in its entirety against all defendants allegedly acting in their official capacities.

However, a Bivens-type action seeking damages from the remaining defendants is an action against them in their individual capacities only.  See, e.g., Armstrong v. Sears, 33 F.3d 182, 185 (2d Cir. 1994); Johnston v. Horne, 875 F.2d 1415, 1424 (9th Cir. 1989).  Here, Johnson also asserts that he is seeking money damages from federal officials who were acting in their individual capacities.  Accordingly, the Court will review the Complaint to determine whether it states any cognizable claims sufficient to withstand summary dismissal at this time pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

13

B.  Denial of Medical Care Claims

    Johnson alleges that defendant Hood delayed his prescribed
medications for eight days, and has confiscated plaintiff's
prescription glasses, for no legitimate reason.  Johnson also
states that defendant Herbik and Wegit conspired to deprive
plaintiff of a medically approved, handicapped bed space despite
plaintiff's proper medical authorization for the handicapped
unit.

    The Eighth Amendment proscription against cruel and unusual
punishment requires that prison officials provide inmates with
adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04
(1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999).  In order
to set forth a cognizable claim for a violation of his right to
adequate medical care, an inmate must allege:  (1) a serious
medical need; and (2) behavior on the part of prison officials
that constitutes deliberate indifference to that need.  Estelle,
429 U.S. at 106; Natale v. Camden County Correctional Facility,
318 F.3d 575, 582 (3d Cir. 2003).

    To satisfy the first prong of the Estelle inquiry, the
inmate must demonstrate that his medical needs are serious.
"Because society does not expect that prisoners will have
unqualified access to health care, deliberate indifference to
medical needs amounts to an Eighth Amendment violation only if
those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9

14

(1992). The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003)(internal quotations and citations omitted); see also Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly,

15

"mere disagreements over medical judgment do not state Eighth
Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir.
1990). "Courts will disavow any attempt to second-guess the
propriety or adequacy of a particular course of treatment ...
[which] remains a question of sound professional judgment."
Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d
Cir. 1979) (internal quotation and citation omitted). Even if a
doctor's judgment concerning the proper course of a prisoner's
treatment ultimately is shown to be mistaken, at most what would
be proved is medical malpractice and not an Eighth Amendment
violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

     The Third Circuit has found deliberate indifference where a
prison official: (1) knows of a prisoner's need for medical
treatment but intentionally refuses to provide it; (2) delays
necessary medical treatment for non-medical reasons; or (3)
prevents a prisoner from receiving needed or recommended
treatment. See Rouse, 182 F.3d at 197. The court has also held
that needless suffering resulting from the denial of simple
medical care, which does not serve any penological purpose,
violates the Eighth Amendment. Atkinson, 316 F.3d at 266. See
also Monmouth County Correctional Institutional Inmates, 834 F.2d
at 346 ("deliberate indifference is demonstrated '[w]hen ...
prison authorities prevent an inmate from receiving recommended
treatment for serious medical needs or deny access to a physician

16

capable of evaluating the need for such treatment"); <u>Durmer v.</u>
<u>O'Carroll</u>, 991 F.2d 64 (3d Cir. 1993); <u>White v. Napoleon</u>, 897
F.2d 103 (3d Cir. 1990).

Here, Johnson alleges that necessary medical prescriptions
were either denied or delayed despite knowledge of plaintiff's
serious medical conditions. Further, Johnson alleges that the
defendants' denial of medications, confiscation of his
prescription glasses, and the denial of a medically authorized
handicapped bed space were committed without any medical or
lawful justification.

Based on these allegations, if true, the Court finds that
Johnson may be able to support a denial of medical care claim
because he may be able to prove the two requisite elements of
such a claim, serious medical need and deliberate indifference.
Johnson alleges serious medical conditions such as high blood
pressure, diabetes, bleeding ulcers and a heart condition.
Further, he states that he has been prescribed medications for
these conditions. As to deliberate indifference, plaintiff
alleges that defendants denied or delayed medically prescribed
treatment for no apparent medical reason. These allegations may
support deliberate indifference where a prison official: (1)
knows of a prisoner's need for medical treatment but
intentionally refuses to provide it; (2) delays necessary medical
treatment for non-medical reasons; or (3) prevents a prisoner

17

from receiving needed or recommended treatment.  See Rouse, 182
F.3d at 197.

    Therefore, the Court will allow these denial of medical care
claims to proceed at this time.

C.  Excessive Force Claim

    Johnson next alleges that defendant Hood kicked plaintiff's
walker, knocking it out from plaintiff and causing plaintiff to
fall and injure his head.  Johnson received hospital treatment
for the head and related injuries he sustained from defendant's
actions.  This claim may be construed as an excessive force claim
in violation of the Eighth Amendment because Johnson is a
convicted prisoner.  See Graham v. Connor, 490 U.S. 386, 392-394
(1989)(cases involving the use of force against convicted
individuals are examined under the Eighth Amendment's
proscription against cruel and unusual punishment).

    "The Eighth Amendment, in only three words, imposes the
constitutional limitation upon punishments:  they cannot be
'cruel and unusual.'"  Rhodes v. Chapman, 452 U.S. 337, 345
(1981).  The Eighth Amendment prohibits conditions which involve
the unnecessary and wanton infliction of pain or are grossly
disproportionate to the severity of the crime warranting
imprisonment.  Id. at 347.  The cruel and unusual punishment
standard is not static, but is measured by "the evolving
standards of decency that mark the progress of a maturing

18

society." Id. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101
(1956)). To state a claim under the Eighth Amendment, an inmate
must satisfy an objective element and a subjective element.
Farmer v. Brennan, 511 U.S. 825, 834 (1994).

The objective element questions whether the deprivation of a
basic human need is sufficiently serious; the subjective
component asks whether the officials acted with a sufficiently
culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298
(1991). The objective component is contextual and responsive to
"'contemporary standards of decency.'" Hudson v. McMillian, 503
U.S. 1, 8 (1992). The subjective component follows from the
principle that "'only the unnecessary and wanton infliction of
pain implicates the Eighth Amendment.'" See Farmer, 511 U.S. at
834 (quoting Wilson, 501 U.S. at 297 (internal quotation marks,
emphasis, and citations omitted)); Rhodes, 452 U.S. at 345. What
is necessary to establish an unnecessary and wanton infliction of
pain varies also according to the nature of the alleged
constitutional violation. Hudson, 503 U.S. at 5.

Where the claim is one of excessive use of force, the core
inquiry as to the subjective component is that set out in Whitley
v. Albers, 475 U.S. 312, 320-21 (1986)(citation omitted):
"'whether force was applied in a good faith effort to maintain or
restore discipline or maliciously and sadistically for the very
purpose of causing harm.'" Quoted in Hudson, 503 U.S. at 6.

19

"When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Id. at 9.  In such cases, a prisoner may prevail on an Eighth Amendment claim even in the absence of a serious injury, the objective component, so long as there is some pain or injury and something more than de minimis force is used.  Id. at 9-10 (finding that blows which caused bruises, swelling, loosened teeth, and a cracked dental plate were not de minimis for Eighth Amendment purposes).

     To determine whether force was used in "good faith" or "maliciously and sadistically," courts have identified several factors, including:

> (1) "the need of the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley v. Albers, 475 U.S. at 321).  Thus, not all use of force is "excessive" and will give rise to the level of a constitutional violation.  See Hudson, 503 U.S. at 9 (it is clear that not "every malevolent touch by a prison guard gives rise to a federal cause of action").  Therefore, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a

20

judge's chambers, violates a prisoner's constitutional rights."
Id. at 9-10.

_____Here, Johnson alleges that defendant Hood maliciously kicked
plaintiff's walker to cause plaintiff to fail and injure himself.
Further, Johnson asserts that he sustained serious injuries that
required his transport to an outside hospital for medical
treatment, thus suggesting that his injuries were not de minimis.[9]
Therefore, based on the allegations in the Complaint, if true, it
would appear that Johnson has asserted facts sufficient to
suggest that defendant exhibited malicious and sadistic conduct
intended to cause plaintiff pain.  Such conduct, if true, is
"repugnant to the conscience of mankind" absent extraordinary
circumstances necessary to justify that kind of force.  Hudson,
503 U.S. at 10.  Accordingly, this Court will allow this claim to
proceed past the screening stage.

D.  Verbal Harassment Claim

Johnson also appears to be asserting a claim of verbal
harassment based on racial slurs by defendants.  Namely, Johnson

---

[9]  "[T]he Eighth Amendment analysis must be driven by the
extent of the force and the circumstances in which it is applied;
not by the resulting injuries."  Smith v. Mensinger, 293 F.3d
641, 648 (3d Cir. 2002).  Thus, the pivotal inquiry in reviewing
an excessive force claim is whether the force was applied
maliciously and sadistically to cause harm.  Id. at 649; Brooks,
204 F.3d at 106.  Otherwise, an inmate "could constitutionally be
attacked for the sole purpose of causing pain as long as the
blows were inflicted in a manner that resulted" in injuries that
were de minimis.  Id.

complains that defendants Hood and Herbik have referred to him as a "monkey". This verbal harassment claim should be dismissed for failure to state a cognizable claim of constitutional magnitude.

Generally, mere verbal harassment does not give rise to a constitutional violation. See McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001)(taunts and threats are not an Eighth Amendment violation); Oltarzewski v. Ruggiero, 830 F.2d 136 (9th Cir. 1987) (vulgar language); Rivera v. Goord, 119 F. Supp.2d 327, 342 (S.D.N.Y. 2000)(verbal harassment does not violate inmate's constitutional rights); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 187-189 & n.3 (D.N.J. 1993)(corrections officer's use of racial slurs did not amount to constitutional violation);; Murray v. Woodburn, 809 F. Supp. 383 (E.D. Pa. 1993); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988). See also Shabazz v. Cole, 69 F. Supp.2d 177, 200-01 (D. Mass. 1999)("without even a suggestion of physical injury, [defendants'] verbal abuse and racial epithets, although continuing for a long period of time, fall short of conscience shocking conduct"); Wright v. Santoro, 714 F. Supp. 665, 667 (S.D.N.Y. 1989), aff'd, 891 F.2d 278 (2d Cir. 1989); Knop v. Johnson, 667 F. Supp. 467 (W.D. Mich. 1987), appeal dismissed, 841 F.2d 1126 (6th Cir. 1988). Allegations that prison personnel have used threatening language and gestures also are not cognizable claims under § 1983. Collins v. Cundy, 603 F.2d 825

22

(10th Cir. 1979) (defendant laughed at prisoner and threatened to hang him).

Therefore, as plaintiff has alleged nothing more than mere words of harassment, this claim will be dismissed for failure to state a cognizable claim upon which relief may be granted.

E.   First Amendment Claims

Johnson principally complains that defendants, J. Keller and Scott Weiss, have violated his First Amendment rights by opening, censoring, and confiscating his outgoing mail addressed to a person outside of the prison.

To state a First Amendment claim,[10] an inmate must establish: (1) allegations indicating a constitutional violation, and (2) that there is no legitimate penological interest for defendant's conduct in circumscribing the First Amendment right.   Lewis v. Casey, 518 U.S. 343 (1996); O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987); Turner v. Safley, 482 U.S. 78 (1987); Abu-Jamal v. Price, 154 F.3d 128 (3d Cir. 1998); DeHart v. Horn, 227 F.3d 47, (3d Cir. 2000).  "Restrictive prison regulations are permissible if they are 'reasonably related to legitimate penological interests,' and are not an 'exaggerated response' to such

---

[10]   The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. Const. amend. I.

objectives." Beard v. Banks, 126 S. Ct. 2572, 2578 (2006)
(quoting Turner v. Safley, 482 U.S. 78, 87 (1987)).

While inmates retain First Amendment rights, they do not
have an unfettered right to send outgoing correspondence.
Prisons may regulate outgoing mail from inmates if the regulation
furthers a legitimate penological interest.[11] See Thornburgh v.
Abbott, 490 U.S. 401, 407 (1989); Turner v. Safley, 482 U.S. 78,
89 (1987); Procunier v. Martinez, 416 U.S. 396, 413-14 (1974)
(prison regulations concerning out-going mail must further
"important or substantial governmental interest[s] unrelated to
the suppression of expression" and must be generally necessary to
protect legitimate government interests); Powell v. Marino, 2004
WL 377662 *3 (E.D.Pa. Feb. 25, 2004). Regulations concerning
outgoing mail must more closely fit the interest served than
regulations concerning incoming mail. Censorship of outgoing
mail may be justified to determine whether it contains contraband
material which threatens prison security or material threatening
the safety of the recipient. See Witherow v. Paff, 52 F.3d 264,
266 (9th Cir. 1995). However, a single interference with the
delivery of an inmate's personal mail, without more, does not
rise to the level of a constitutional deprivation. Morgan v.

---

[11]    Generally, prison officials have more leeway to regulate
incoming mail because of the greater security risks inherent in
materials entering a prison. Thornburgh v. Abbott, 490 U.S. 401,
413 (1989).

Montayne, 516 F.2d 1367 (2d Cir. 1975), cert. denied, 424 U.S. 973 (1976).

In this case, Johnson claims his rights to free expression and association were violated when his letter containing a sexual proposal to a female employee at the Kintock Group was opened and confiscated.  Johnson alleges that the letter actually was opened by the director at the Kintock Group and returned to the prison. Johnson was then charged with a disciplinary infraction.

This Court is hard pressed to ascertain how Johnson's First Amendment rights were implicated when he received a disciplinary violation regarding the intercepted letter that contained inappropriate sexual innuendos to a female staff worker.  Prison officials have "broad discretion" in monitoring inmate correspondence to ensure that the inmates are not "passing contraband" or "making clearly inappropriate comments, which may be expected to circulate among prisoners."  Shaw v. Murphy, 532 U.S. 223, 231 (2001); Giba v. Cook, 232 F. Supp.2d 1171, 1189 (D.Or. 2002).  See also United States v. Felipe, 148 F.3d 101, 108 (2d Cir.), cert. denied, 525 U.S. 907 (1998) and 525 U.S. 1059(1998); Jackson v. Potuondo, 2007 WL 607342 *13 (N.D.N.Y., Feb. 20, 2007)(interception of prisoner correspondence does not violate the First or Fourth Amendment rights if prison officials have good or reasonable cause to inspect the mail).  Here, Johnson's letter was not under the guise of legal mail, but it

25

did contain uninvited and inappropriate comments to a female

halfway house employment counselor, who had appeared at the

prison for a Job Fair.  Prison officials have a legitimate

security interest to prevent such inmate correspondence.

Moreover, it appears that the letter was not opened by the prison

officials at FCI Fort Dix, but rather was intercepted by the

director of the Kintock Group where the intended recipient was

employed.  Finally, plaintiff asserts only one incident of this

alleged infringement on his outgoing mail.  Therefore, this Court

finds no violation of Johnson's First Amendment rights to free

speech and association, and his claim will be dismissed

accordingly.

F.   Denial of Due Process Claims

The Complaint also appears to assert a denial of

disciplinary due process in violation of Johnson's Fifth

Amendment rights.  Plaintiff alleges that both DHO Boyce and DHO

Mulvey disregarded Johnson's offer of evidence that he was

permitted under the First Amendment to write letters to outside

persons and say whatever he chooses to say.

The Due Process Clause of the Fifth or Fourteenth Amendments

provides that liberty interests of a constitutional dimension may

not be rescinded without certain procedural protections.  U.S.

Const. amend. XIV.  In Wolff v. McDonnell, 418 U.S. 539 (1974),

the Supreme Court set forth the requirements of due process in

26

prison disciplinary hearings.  An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals." Wolff, 418 U.S. at 563-71.  An inmate is also entitled to an inmate representative in some cases, and a written decision by the factfinder as to evidence relied upon and findings.  See Von Kahl, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994)(citing Wolff, 418 U.S. at 563-72).  However, in Wolff, the Supreme Court held that, while prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment.  Id. at 556-57; Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

The Bureau of Prisons ("BOP") has specific guidelines for inmate disciplinary procedures, which are codified at 28 C.F.R. § 541.10, et seq.  In particular, DHO hearing procedures are set forth at § 541.17.  These procedures require the following: (a) 24-hour advance written notice of charge before inmate's initial

27

appearance before the DHO; this right may be waived, § 541.17(a);
(b) an inmate shall be provided a staff representative at the DHO
hearing, if so desired, § 541.17(b); (c) an inmate is entitled to
make a statement and to present documentary evidence at the DHO
hearing; the inmate may also call witnesses to testify on his
behalf, but may not himself question the witnesses, § 541.17(c);
(d) the inmate is entitled to be present throughout the hearing,
except during a period of deliberation or when institutional
security would be jeopardized, § 541.17(d).  The DHO shall
prepare a record of the proceedings that documents the advisement
of the inmate's rights, the DHO's findings, the DHO's decision,
the specific evidence relied upon by the DHO, and a brief
statement of the reasons for imposition of sanctions.  28 C.F.R.
§ 541.17(g).  A written copy of the DHO's decision and
disposition must be provided to the inmate ordinarily within 10
days.  Id.

     These procedures are intended to meet or exceed the due
process requirements prescribed by Wolff.  See Von Kahl, 855 F.
Supp. at 1418.

     Here, Johnson essentially contends that he was denied his
right to introduce evidence pertaining to his First Amendment
right to correspond with persons outside the prison.  It appears
from the allegations in the Complaint that Johnson's first
disciplinary hearing was remanded, and the disciplinary

28

infraction was reduced on the second hearing.  Johnson seems to
be arguing that the DHOs were predisposed against him and did not
look at offered evidence before making their predetermined
finding of plaintiff's guilt on the disciplinary charges.  These
allegations, if true, may be sufficient to show that plaintiff
may have been denied procedural due process during his
disciplinary hearings.

     To the extent that there may have been a Wolff procedural
violation, Johnson may bring a Bivens action for money damages
stemming from the alleged denial of procedural due process, if
the procedural protection is cognizable in a § 1983 or Bivens
claim.  See Wolff, supra; Henry v. Sanchez, 923 F. Supp. 1266,
1270 (C.D. Calif. 1996).  In Wolff, the Supreme Court held that,
although claims for injunctive relief were barred by Preiser v.
Rodriquez, 411 U.S. 475 (1973), plaintiffs were allowed to bring
a damage claim because the claim was based on "damages for the
deprivation of civil rights resulting from the use of the
allegedly unconstitutional procedure." Sanchez, 923 F. Supp. at
1270.  In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme
Court reaffirmed this principle, stating that Wolff "recognized a
Section 1983 claim for using the wrong procedures, not for
reaching the wrong result. ... Thus, the claim at issue in Wolff
did not call into question the lawfulness of plaintiff's
continuing confinement." Heck, 512 U.S. at 482-83.

When an inmate is not afforded procedural protections to which he may be entitled, the district court must determine whether the denial of due process caused the resulting deprivations for which damages are sought.  See Carey v. Piphus, 435 U.S. 247, 261 (1977).  A plaintiff who brings a successful Bivens or § 1983 action based on a due process violation may be entitled to nominal damages even if there is no proof of actual injury.  Carey, 435 U.S. at 266-67.

In this case, even if this Court were to find that Johnson should have been afforded the opportunity to offer evidence of his First Amendment right to send the subject letter to an "outside" person, or that the DHOs were biased against him as alleged, Johnson is not simply challenging the constitutionality of the procedures used, but instead, is actually challenging the result of the disciplinary hearings.  He seeks injunctive relief in the form of his release from prison, as well as money damages for the alleged due process violations.  Thus, in essence, this action attempts to invalidate the prison disciplinary proceedings and the sanctions imposed (which resulted in the extension of his parole release date).

In Preiser, the Supreme Court held that a habeas petition is the proper mechanism for an inmate to challenge the "fact or duration" of his confinement.  411 U.S. at 498-99.  The Court extended this ruling to include a challenge to prison

30

disciplinary proceedings that affect the length of confinement, such as the deprivation or loss of good conduct time.  Muhammad v. Close, 540 U.S. 749 (2004); Edwards v. Balisok, 520 U.S. 641 (1997).

In Edwards v. Balisok, the Supreme Court applied the lessons of Preiser and Heck[12] to a state prisoner action, seeking compensatory and punitive damages, challenging the constitutionality of procedures used in a prison disciplinary proceeding that resulted in the loss of good-time credits, but not necessarily challenging the result and not seeking the restoration of the good-time credits.  Again, the Court emphasized that such a claim is not cognizable under § 1983 if a

---

[12]  In Heck, the Supreme Court rejected § 1983 as a vehicle to challenge the lawfulness of a criminal judgment.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. at 486-87 (footnote omitted).  The Court further instructed district courts, in determining whether a complaint states a claim under § 1983, to evaluate whether a favorable outcome would necessarily imply the invalidity of a criminal judgment.  512 U.S. at 487.

favorable outcome would necessarily imply the invalidity of the challenged judgment, there the disciplinary finding and punishment.  520 U.S. at 646-8.

Here, it is clear that Johnson is challenging the result of his prison disciplinary proceedings, not simply the constitutionality of the procedures used during the proceedings. Johnson seeks his immediate release on parole, together with a lump sum for compensatory and punitive damages and money damages for each day he remains incarcerated.  Clearly then, a favorable outcome on the damages claim would necessarily imply the invalidity of the prison disciplinary finding and sanctions. Consequently, Johnson's damages claim cannot proceed until such time as the disciplinary finding is invalidated through habeas corpus or some other appropriate means.

Therefore, this denial of disciplinary due process claim will be dismissed without prejudice.  To the extent that Johnson asks this Court to construe his action as a habeas petition under 28 U.S.C. § 2241, the Court will sever the habeas claim and the Court will direct the Clerk of the Court to establish a separate docket for the § 2241 petition.[13]

---

[13]    The Court notes that the § 2241 petition would be deficient under 28 U.S.C. § 2242, which requires that a petition for a writ of habeas corpus shall allege the name of the person who has custody over the petitioner.  Indeed, the warden or administrator of the facility where the petitioner is held in custody is an indispensable party respondent, for want of whose presence the petition must be dismissed.  See Morehead v.

32

Finally, to the extent that Johnson may be asserting a claim that he was falsely charged with disciplinary infractions he did not commit, such claim is subject to dismissal.  In this case, Johnson alleges that he has had "bogus" disciplinary reports filed against him by defendants Ordonez, Hood, and Herbik, to prevent plaintiff's release on parole.  However, the act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights.  See Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir. 1986)(holding that "the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges"), cert. denied, 485 U.S. 982 (1988); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984)(finding that so long as prison officials provide a prisoner with the procedural requirements outlined in Wolff, 418 U.S. at 558, then the prisoner has not suffered a constitutional violation).  See also Creter v. Arvonio, No. 92-4493, 1993 WL 306425, at *7 (D.N.J. Aug. 5, 1993); Duncan v. Neas, No. 86-109, 1988 WL 91571, at *1 (D.N.J. Aug. 30, 1988)(determining that "the alleged knowing falsity of the charge [does not state] a claim of deprivation of a

California, 339 F.2d 170, 171 (9th Cir. 1964).  Therefore, the Court will allow petitioner to amend his § 2241 petition to name his custodian as the proper party respondent.

constitutionally protected liberty interest ... where procedural due process protections were provided").

G.  Claims Involving Johnson's Parole Release and Parole Hearing

Johnson states that he had a parole release date of December 16, 2006.  However, on December 1, 2006, the USPC rescinded the release date and rescheduled Johnson's parole hearing for January 10, 2007, because of the disciplinary violation involving plaintiff's letter to a female staff worker at the Kintock Group. Johnson complains that defendant Ordonez knew well before December 1, 2006, that the Regional Director had remanded the disciplinary matter for a new hearing on a lesser security violation than that originally charged.  This Court finds no cognizable claim based on plaintiff's allegations.  The fact that Johnson's disciplinary matter was remanded was sufficient for the USPC to postpone Johnson's parole release date.  The USPC did not rescind the release date based on the original disciplinary finding before appeal, but rather because the disciplinary matter was remanded and pending before the parole release date of December 16, 2006.

Johnson also claims that defendant USPC Examiner Pacholski refused to accept evidence by Johnson in mitigation of the disciplinary charge.  Namely, Pacholski declined to acknowledge that the disciplinary matter had been reduced to a less serious disciplinary infraction by the FBOP's Regional Director on

34

administrative appeal.  The initial infraction involved making a
sexual proposal.  It was reduced to "interference with staff".
This claim also will be dismissed.

Johnson provided a copy of the administrative appeal
decision regarding the extension of his parole release date.
(Docket Entry No. 2 at Exhibit 1).  The National Appeals Board
expressly found that the "interference with staff" violation
carried the same rescission guideline range as the "making sexual
proposal" violation.  Consequently, the Board held:

> For this reason, the Board finds unnecessary a review of the
> basis for the Commission's determination that you committed
> Making Sexual Proposals.  Instead, to simplify matters, the
> Board has adopted the findings of the DHO Report dated
> 12/14/06 and has modified the decision accordingly.  The DHO
> made essentially the same factually [sic] findings that were
> made at your first hearing.
>
> The DHO concluded that certain comments in your letter
> contained sexual innuendos," comments that were "sexual in
> nature" and "harassing" and that you engaged in conduct that
> "interferes with the ability of staff to complete their
> daily tasks as it is necessary to stop their activities and
> address this inappropriate behavior."  Further, such
> behavior "creates a climate of fear for the staff member in
> the work environment.  In some instances, staff members have
> been compromised by offers from inmates and the security of
> the institution placed at great risk."  The Board finds your
> conduct could result in outside groups, such as Kintock,
> declining to provide counseling services at an institution
> out of concerns for the safety and privacy of their
> employees.
>
> The Board finds no merit in your claims that you were
> entitled under the First Amendment to write a letter with
> the offensive comments to the employment counselor.  The
> case you enclosed with your appeal refers to a letter
> written by an inmate to his girlfriend in which he
> criticized the mail censoring officer; your letter contained
> sexual advances and at least one reference to a sexual act

to an employment counselor, who had appeared in a
professional capacity at the institution's Job Fair.  The
Board finds no merit in your claim that you were trying to
get assistance in writing a book about yourself.

(Docket Entry No. 2 at Exhibit 1).

Based on the National Appeals Board findings, any error by

the USPC Examiner Pacholski in declining to hear plaintiff's

mitigating evidence is inconsequential because the disciplinary

infraction on which Pacholski relied carried the same rescission

guideline range as the "interference with staff" infraction.  The

Board found no reason for a new parole release hearing, as it

would not change the ultimate outcome.  Thus, rather than a new

hearing to give Johnson an opportunity to present his purported

evidence, Johnson is essentially challenging the USPC decision

and seeking his earlier or immediate release on parole.  To the

extent that Johnson is seeking his release on parole, he must do

so in a habeas petition under 28 U.S.C. § 2241.

H.    New Claims Against New Defendants

On May 9, 2007, this Court received plaintiff's amendment to

his Complaint to add new defendants, E. Davis and S. Smith.

Johnson asserts that these defendants retaliated against

plaintiff for filing suit.[14]  In particular, Johnson alleges that

---

[14]    Johnson filed an identical application to amend his
Complaint in his earlier action, still pending, Johnson v.
Chairperson United States Parole Commission, Civil No. 06-2390
(NLH).  As a matter of judicial expediency, the Court will deny
Johnson's application in his earlier case, because this claim
appears to relate more to the present matter.

36

these defendants filed disciplinary charges against him
("disobeying a direct order" and "being in an unauthorized area")
solely because plaintiff has filed lawsuits against prison
officials.

"Retaliation for the exercise of constitutionally protected
rights is itself a violation of rights secured by the
Constitution ... ."   White v. Napoleon, 897 F.2d 103, 111-12 (3d
Cir. 1990).  To prevail on a retaliation claim, plaintiff must
demonstrate that (1) he engaged in constitutionally-protected
activity; (2) he suffered, at the hands of a state actor, adverse
action "sufficient to deter a person of ordinary firmness from
exercising his [constitutional] rights;" and (3) the protected
activity was a substantial or motivating factor in the state
actor's decision to take adverse action.  Rauser v. Horn, 241
F.3d 330, 333 (3d Cir. 2001) (quoting Allah v. Seiverling, 229
F.3d 220, 225 (3d Cir. 2000)).  See also Anderson v. Davila, 125
F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist.
Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v.
Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with
approval in Allah, 229 F.3d at 225.

Here, Johnson alleges that defendants Davis and Smith
retaliated against plaintiff for filing complaints and
grievances.  It is plain from this Complaint that Johnson is not
actually deterred from seeking redress through the administrative

37

process in prison, and now in federal court by filing this
Complaint and an earlier, pending civil action, Johnson v.
Chairperson United States Parole Commission, Civil No. 06-2390
(NLH).  However, the use of disciplinary action to suppress
plaintiff's right to complain may suggest impermissible
retaliatory action in violation of plaintiff's First Amendment
rights.  Because Johnson alleges that he has been subject to
disciplinary action solely for asserting his right to file
grievances, a protected First Amendment activity, his
allegations, if true, may be sufficient at this early juncture to
allow this claim to proceed against defendants Davis and Smith.

IV.    CONCLUSION

     For the reasons set forth above, plaintiff's claims
asserting use of excessive force and denial of medical care in
violation of the Eighth Amendment will be allowed to proceed
against defendants Hood, Herbik, and Wegit at this time.
However, plaintiff's Eighth Amendment claim of verbal harassment
asserted against defendants Hood and Herbik, his First Amendment
claim asserting interference with his mail, as against defendants
J. Keller and Scott Weiss, and his Fifth Amendment claims
alleging denial of due process with respect to his parole
hearing, his disciplinary hearings, and the filing of false
disciplinary charges, asserted against defendants, DHO Boyce, DHO
Mulvey, USPC Examiner Pacholski, Ordonez, Hood, and Herbik, will

be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted. Finally, plaintiff's new claim asserting retaliation by new defendants, E. Davis and S. Smith, in violation of plaintiff's First Amendment rights, will be allowed to proceed at this time. An appropriate order follows.

s/Noel L. Hillman
NOEL L. HILLMAN
United States District Judge

Dated: June 14, 2007
At Camden, New Jersey